Hoffman Lumber Co. v. Commissioner.
Hoffman Lumber Co. v. Commissioner
Docket No. 30899.
United States Tax Court
1952 Tax Ct. Memo LEXIS 189; 11 T.C.M. (CCH) 579; T.C.M. (RIA) 52174; June 9, 1952
*189 Fred L. Rosenbloom, Esq., Packard Bldg., Philadelphia, Pa., and Thomas P. Glassmoyer, Esq., for the petitioner. Max J. Hamburger, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent has determined a deficiency of $7,965.38 in petitioner's income tax for the fiscal year ended February 28, 1947. The only question to be determined is whether certain amounts in excess of O.P.A. ceiling prices which petitioner allegedly paid for lumber and shingles constituted a part of the cost of goods sold. Some of the facts have been stipulated. Findings of Fact The stipulated facts are found as set out in the written stipulation and attached exhibits. Petitioner is a corporation engaged in the retail lumber business with its principal office located at West Chester, Pennsylvania. Its return for the year involved was filed with the collector for the first district of Pennsylvania. The return was prepared on an accrual basis. One of petitioner's suppliers of lumber was Gordon R. French & Son, wholesale lumber dealer in Philadelphia, Pennsylvania. During 1947 petitioner entered into an agreement with Gordon R French & Son, or with Gordon R. *190 French, individually (the term French will be used hereinafter to refer either to the firm or to Gordon R. French individually), whereby French agreed to supply petitioner with lumber at ceiling prices, and petitioner agreed that for each 10,000 feet of the lumber purchased from French it would subscribe for one share of preferred stock of I-L Logging Co., Inc., at $100. I-L Logging Co., Inc., was an Oregon corporation which held title to timberlands. A majority of its stock was owned by Irwin & Lyons, a partnership engaged in the lumber business. French obtained lumber from Irwin & Lyons. As a part of this agreement petitioner gave Robert F. Maguire, the attorney for Irwin & Lyons, a three-year option to purchase all of the shares which it might acquire at a price of $1 per share. Owing to the scarcity of lumber at that time it was necessary for petitioner to enter into this agreement with French in order to obtain a sufficient supply of lumber to operate its business. During the taxable year petitioner purchased from French in five separate transactions approximately 2,180,000 board feet of lumber. This lumber was delivered to petitioner over the period April to December 31, 1946. The *191 invoices were paid by petitioner as deliveries were made. Pursuant to this agreement with French, petitioner during the taxable year executed five separate subscriptions for a total of 218 shares of the preferred stock of I-L Logging Co. The following table shows the number of shares subscribed, the amounts paid on the subscriptions and the dates of such payments: Number of
Date of
Shares
Amount Paid
Check
25
$ 2,500
3-12-46
75
7,500
4-13-46
25
2,500
5- 9-46
31
3,100
6- 5-46
62
6,200
7- 5-46
Total - 218
$21,800
On December 23, 1946, Maguire exercised his option to purchase all of the shares subscribed for by petitioner and in payment therefor deposited $218 to petitioner's credit in one of the Portland, Oregon, banks. Petitioner then notified I-L Logging Co. of the exercise of the option and authorized it to issue the 218 shares of stock then registered in its name to Maguire. These shares had never been issued to petitioner although they were in its name. In its books petitioner charged the subscription payments to its purchases account and credited the account with the $218 received from Maguire. It reported the balance of its subscriptions, *192 $21,582, in its return for 1947 as part of the cost of goods sold. During the taxable year 1947 petitioner also entered into an agreement with French similar to that described above for the purchase of cedar shingles. French was to acquire the shingles from, or through, a corporation of which he was a principal stockholder, Skagit Mill Corporation. French agreed to supply petitioner shingles at a price or $1.75 per square over ceiling prices. Petitioner agreed to make, and on June 13, 1946, did make, an advance deposit to French of $10,000 against which over-ceiling price charges were to be made as the shingles were delivered. During June, August and October 1946 (within petitioner's taxable year 1947) petitioner received six separate shipments of shingles from French totaling 1,851 squares, the over-ceiling price charges on which amounted to $3,239.25. These shingles were billed to petitioner at ceiling prices. Shortly after the last shipment French advised petitioner that the mill had been sold and that no further shipments of shingles would be made, and that the balance of its $10,000 deposit, $6,760.75, would be refunded. A check for that amount, together with a stock certificate *193 for 100 shares of Skagit Mill Corporation, was sent to petitioner by French on April 15, 1947. In the transmittal letter French wrote the petitioner's president as follows: "Mr. Vernon L. Hoffman, Hoffman Lumber Company West Chester, Penna. "Dear Vernon: "We enclose herewith our check for $6760.75 to purchase your 100 shares of Preferred Stock in the Skagit Mill Corporation, Certificate No. 1. "Kindly endorse this stock in blank, and return it to us by registered mail. This cleans up the Skagit transaction. "Very truly yours, "SKAGIT MILL CORPORATION, "(Signed) G. M. French "President." This letter was the first knowledge that Hoffman had of any stock purchase in connection with the transaction. As requested by French he indorsed the stock certificate and returned it to him. In its books petitioner charged the $10,000 deposit with French to purchases account and credited the account with the $6,760.75 refunded. Petitioner made no sales during the taxable year at above ceiling prices. The amounts which petitioner paid to French during the taxable year 1947 for lumber and shingles above O.P.A. ceiling prices were intended to be and were in fact a part of the cost to *194 petitioner for these goods. Opinion LEMIRE, Judge: Respondent contends that the facts bring this case within the rule of , while petitioner relies upon . The principle of the Sullenger case, in which the respondent does not acquiesce, is that in computing gross receipts from the sale of goods amounts actually paid therefor over O.P.A. ceiling prices must be treated as cost of goods sold. The Sackstein case does not oppose that principle. It turns upon a factual situation. The evidence there did not show that the alleged over-ceiling purchase money payments were not in fact additional contributions made by the taxpayer stockholder to make up periodic losses of the seller corporation. Apparently, there was no question but that the taxpayer was a bona fide stockholder of that corporation. In the instant case the evidence leaves no room for doubt that the overpayments were part of the costs of the lumber and shingles purchased by the petitioner. While petitioner went through the formality of subscribing for shares of I-L Logging Co. in purchasing lumber, it never became a bona fide stockholder of *195 that company and never intended to do so. The stock purchase transaction was an obvious sham to circumvent the O.P.A. price regulations. As to both transactions, that is the lumber and the shingles, the evidence permits of no other conclusion than that petitioner paid the disputed amounts as over-ceiling prices on purchases of the materials. As such they constitute a part of the cost of goods sold. Decision will be entered under Rule 50.